Case number 20-1044, Communications Workers of America, AFL-CIO Petitioner v. National Labor Relations Board. Ms. Pittman for the petitioner, Ms. DeLauro for the respondents. Good morning, counsel. Good morning. Good morning, your honor. You may proceed. Thank you so much. May it please the court. The main issue in this case is whether T-Voice is a labor organization within the meaning of Section 25 of the National Labor Relations Act. If so, then because of T-Mobile's admitted domination of T-Voice, it is an unlawful Section 882 company union that Congress prohibited so that employees could effectuate their statutory right to freely choose an independent representative. An organization of any type is a labor organization if employees participate in it, its purpose in part is to deal with the employer, and those dealings concern working conditions. The only question we have here is whether T-Voice dealt with T-Mobile, which is the second criterion. T-Voice is an organization with its own charter designed by T-Mobile sometime before January 2015 as a vehicle for communications between employees and management. It's comprised of management and of employee representatives whom T-Mobile trains and appoints for lengthy terms. T-Mobile assigns the employee representatives the tasks of, first, soliciting and gathering co-workers' complaints about working conditions in person and in writing, second, representing co-workers in leadership meetings while presenting to and discussing those complaints with management with the aim of improving employee working conditions, and three, after management's consideration, reporting management's decisions about the complaints as well as proposals back to their co-workers. My understanding is that most of what is happening in these in this arrangement has to do with not with wages, hours, and benefits, it has to do with the customer relations aspects of the job, and employees who are in that field are voicing their concerns about what's going on. Two or three percent may go to benefits, but not the thing you typically have in collective bargaining. Well, as a matter of the record, the facts in the record, the employee concerns that were presented were very significant to the employees. Concerned compensation, paid time off, various leave issues, but in addition to that... No, no, no. I think you're missing the thrust of my question. The thrust of my question is, as I understand the record, by a wide margin, most of what was being discussed did not concern wages and hours, conditions of employment, they concern the work aspect, the customer relations work aspect of the job. It is the case that T-Boys dealt with customer issues, but it also dealt with employees. No, no. Am I wrong in understanding that that was the wide, by a wide percentage? That's most of what was being discussed. The union believes that that is not accurate. There were hundreds of, literally hundreds, of complaints about working conditions that were presented through T-Boys. So, it is the case that there were a larger number, but more importantly, the issue of whether these were employee or non-employee matters is not really before the court. The board passed on that in footnote 21. The board said that it was not going to decide whether the organization dealt with working conditions. It simply assumed that it did. So, if the issue that you think it needs to be decided is whether it was working conditions, then it needs to go back to the board because the board did not decide that. I think in your brief, you make the statutory argument as well, don't you? Yes. The statutory argument is that an organization does not need to wholly deal with employee matters. It simply needs to be part of the organization. So, if Judge Edwards' assumption about the record were correct, that only a minuscule number of issues with which T-Boys dealt involved wages and working conditions. Would that make a difference to your argument? And if not, then what is your best precedent for that? I don't believe that it would make a difference. And I would say that the best precedent, well, there's quite a number of cases, in fact. I would say Dillon, UPMC, Reno, Yukon Manufacturing, all of those concerned situations in which there were issues other than individual employees presenting problems through a construct of an organization on behalf of their co-workers. Well, what I'm trying to understand in this case is after Congress passed the statute and we can look to the legislative history in terms of what type of activity by the employer it was Congress was concerned with at that time, is this the type of activity, assuming Judge Edwards is correct on the record, that Congress intended to capture? In other words, as I see the board precedent, it acknowledges that the suggestion box certainly is permissible, and even a sophisticated suggestion box procedure is permissible. And I gather what the union is arguing and what the board's precedent has suggested is that in passing the statute, Congress contemplated that certain types of activities were precisely the type of activities that would interfere with organization rights, that is the employee's right to have an independent representative. Can you flesh that out a little bit? Well, yes. The legislative record as described in Cabot-Carbon and in electromation is that collective bargaining was not the definition for what dealing is. Dealing with is as simple as employees in some kind of organization making proposals, management considering them, and those concerning those proposals or grievances concerning working conditions. And the organization only has to be partly doing that. I'm sorry, I didn't mean to interrupt you. One of the board cases, in fact, all the board cases seem to talk about circumstances where management members of the committee discuss proposals with employee members and have the power to reject any proposal. That's what dealing is. That's not the situation here. You have individual employees submitting their concerns about, we won't debate what the concerns are over, and the representatives simply pass this on. There's no dealing between, and the employees are not working as a group. They're submitting whatever they have to submit, and then those matters are then passed on to management. No judgment being made as a union representative might make. They're simply passed on. Am I wrong? I do believe that the record indicates otherwise, your honor. T-voice as a whole was not a suggestion box. These T-voice representatives, they were called representatives, and they were not automatons. They were meeting with employees in person to gather those employees' suggestions and complaints. But there was no group consensus reached in those meetings, right? And it is not necessary. We don't know that. I'm just trying to understand, because it's certainly far removed from what you'd normally expect in dealing with or in collective bargaining, where we have union representatives. That's not normally how it operates. It sounds more like a suggestion box, where the representatives are representatives, but they simply receive information coming from employees, and they pass it on. They sat in meetings. I'm so sorry. No, no. Go ahead. I'm sorry. Go ahead. They sat in multiple meetings every month with management and discussed the pain points that employees presented. And these included issues related to employee compensation, scheduling, leaves, the tools that they used. These were actively discussed. They met at the national level, the regional level, and the local level. Those representatives had no authority to cut a deal with whomever they're meeting with, right? Cutting a deal is not required for dealing with. I'm just asking for an understanding, asking to understand the record. They had no authority to cut a deal, right? The record is silent on that issue. The record does not. Let me put it this way, because I don't want to waste time on stuff that's pretty clear. There's nothing to indicate that the management, the folks who collected the information, had the authority to cut a deal on behalf of the company. They simply collected information and passed it on to management representatives. The employees thereafter did not in any way deal with, bargain with, discuss with those who could make the final decision on what was coming to them, right? In other words, there were representatives who collected information and then passed it on to management people who would then go through and decide what to do with it. Isn't that what was going on? In part, but if you look at the notes of some of the meetings after they occurred, you'll see that in those meetings, the management representatives agreed to suggestions that were being presented by the T-voice representatives. What do you mean agreed to? Well, for example, in one national meeting, there was on the table a discussion about whether or not employee training on a particular issue was adequate. The T-voice representatives said, no, this employee training is not adequate. The language needs to be changed here and there and management said, okay, we will change this language. That is simply one example. Now, it is the case that in many instances, the people, the management people sitting in the meetings did go back and consult with other management people before responding, but that too constitutes dealing because all you really need is management consideration of an employee suggestion or grievance. No, I agree. If you had a situation where the arrangement was that groups of managers and groups of employees would routinely get together and employees would make proposals and the manager sitting there had the authority to what the act intends to cover. That isn't my understanding of what was going on. And the other thing I wanted to ask you about, the board has owed a lot of deference here. They're reading the record and making a determination. Where did they go wrong? It isn't whether we might reach a different judgment. It's where did they go wrong and what precedent are they flying against? Well, they went wrong in a number of ways, but a very major one is this notion that there has to be group action on the part of the employee members of the organization. There is no such requirement. In fact, as recently as 2018 in UPMC, the board found dealing with where individual employees made proposals on behalf of their construct, which management considered, and the board found dealing with. So, there is no group requirement. Let me make sure I understand. They made proposals, so they came to an understanding as an employee group as to what to submit to the company. And then those employees who represented the rest of the employees advanced those proposals to the case you were just referring to, which I agree is a much more suspect case, but that's not what's going on here. Well, the thing that I disagree with is the notion that employee members of the organization have to confer with each other and agree. You know, a union steward doesn't do that when they go to a manager and say, look, this employee is having this problem in this complaint. There is no requirement. The board does not discuss, it does not get into in nearly all of the cases that the union relies on what communication is going on between the employee members. The focus instead is on what is the communication between employees and management. Okay. If I might, well, actually, I'm out of time. Well, let me just ask one other question to clarify, trying to draw the line. And if the line is not clear, then why wouldn't we defer to the board? And why wouldn't we be obligated to defer to the board? And I thought your argument in part was that the board's precedent basically rebutted each of the board's reasons for the conclusions it reached. And you cite a couple of cases and the cases you cite that I've read are cases where they don't go quite as deep as Edward's questions suggest. And that's why I'm trying to draw, understand the line that you're drawing as to how, you know, a conscientious employer gets information about what his employees or her employees are concerned about and has a chance to respond to them. And if the employees don't like the response, or there is no response, then, you know, the employees can certainly decide that they want an independent representative. And a lot of your arguments seem to be that even this sort of glorified suggestion box comes too close, where the employee raises a complaint about working conditions, leave, those types of things, training. Well, it's, I'm sorry, Your Honor, were you finished? Yes. I'm so sorry. The, T-Voice was a whole organization. There was this suggestion box concept in that employees submitted suggestions to T-Voice representatives by email or otherwise. But cardboard boxes don't meet face to face with other cardboard boxes and say, tell me what your problems are. And these T-Voice representatives were doing that. They were then going into meetings with management where some of the complaints and suggestions that their co-workers had brought to them were the topic of discussion with management. And management responded, sometimes accepting and sometimes rejecting the suggestions or the complaints. So as I understand it, the T-Voice had the authority to weed out complaints so they weren't, you know, multiple complaints on the same subject or they weren't frivolous, that type of thing. But it couldn't make any decision until after management reviewed the proposal and decided how it wanted to respond. And I think you'll agree with all that. And the record shows that. And so the board comes along and says, look, the AOJ posed the wrong question. Here's how we have to look at this. And it, you know, it responds to suggestions about parts of the record it allegedly overlooked or shouldn't have relied on. And in reply, you basically repeat what you said in your opening brief. And it's a little like two ships passing in the night in that regard. So you're not seeking a remand except on the theory that the board, A, either didn't conform to its precedent or didn't explain why it wasn't. And misrepresented or misconstrued the record, is that correct? That's correct. We think that the court should reverse. The important thing from the union's is that the board, in addition to erecting this false notion that there has to be group interaction between employees, cleaved T-VOICE into two sections. And it was not a bifurcated organization. It was a whole organization with the same T-VOICE representatives interacting with their co-workers to collect ideas and pain points, and then going into meetings with management to talk about them. So in one of the cases on which you rely heavily, this Dillon Storrs. Yes. At the end, or on page 14 of the Westlaw copy, and I think it's page 11 of the decision, there's this very quick paragraph saying, in summary, most, if not all, of the employee representative proposals and grievances concern the employee's terms and conditions of employment. And it goes on to say those proposals and grievances had been advanced collectively on a representational basis. Why is what the board said here not consistent with that precedent? The board here treated the representatives as individual employees. And in Dillon, the board, those employees were individual, but just like the T-VOICE representatives here, they were acting in a representative capacity, and they were presenting issues that were of collective importance to the employees. That is exactly what the T-VOICE representatives here were doing. They were called representatives for a reason. They represented collective concerns. And in that sense, they were acting collectively, exactly like in Dillon. Any further questions from my colleagues? No. All right. Let us hear from Council for Respondent. Give you a couple of minutes on rebuttal. Thank you, Your Honors. Greg Lauro for the National Labor Relations Board. One question Your Honors asked this morning is, where is the error the board made? The issue here is dealing, and the board made very detailed actual findings on all aspects of the T-VOICE program and came to the conclusion it was not dealing, but within the safe havens. And the union's brief, I think her answer to your question about what is the error, at least on dealing with, is that the board's decision here did not account for earlier board decisions that seem inconsistent with this approach. That is what she says the error is. I will give you just two examples under dealing with. So in Reno, Hilton, the employee committees made proposals to the employer, and the board said that satisfied the dealing with requirement. And there wasn't any suggestion at all that the employees had deliberated among themselves. And there was no, I didn't see that the board distinguished Reno in its decision. Second example of the same thing is Dillon Stores, where the suggestions that the employees made here were very similar to the ones in Dillon Stores, and the board found dealing with. But again, there was no evidence of any deliberation, and the ALJ relied on it. Yet the board doesn't discuss either one of these cases. That's her point. She said that's the legal error. And our case law says that agencies have to, they can depart from earlier cases, they just have to acknowledge it and explain it. And her argument is that didn't happen here. No, I understand, Your Honor, if I may. Yes, sure. In Dillon, as was discussed this morning. Wait, before you explain Dillon to me. Yes, sir. You agree the board didn't discuss Dillon, right? I don't recall the board discussing those cases in particular. What the board did, consistent with precedent, is lay out the standard for dealing, you know, less than collective bargaining to have a collective bargaining agreement, but allowing room for some cooperation. And there being certain attributes, like advancing collective proposals. There's other cases by opponent sites that are different because proposals really... I'm sorry, I hear your point, but the board said there was no dealing here because the employees had not deliberated, right? That's one of the board's factual findings. But her point is that the deliberation requirement, that's inconsistent with other board decisions. I don't think it's inconsistent, Your Honor. I think the requirement, and both group proposals. There was no deliberation in either of those cases. Sure, they were collective proposals. They were concerns raised by all the employees. They were concerns that were collective, but there's no evidence that there was any deliberation among the employees before they submitted their concerns. And the board here said that's why the absence of that is why there's no deal. Well, in my view, the board gave a lot of reasons why there was no dealing. I think in explaining that there was no deliberation, I think the board was explaining on the suggestion box part of it, which I think we all agree is there. The representatives didn't have a right to modify or choose which to submit ministerially to management through the SharePoint program. But the board also said correctly and consistent with precedent like Dillon and Reno and with other precedent the board cited, that typically bilateral dealing, and we have to have a pattern or practice of it, not isolated instances, does involve the advancement of group proposals. Now, it may be you have times where there's not a pre-deliberation to make it a group proposal, but an employee committee could still choose to advance a group proposal. And it may count, but that's not what happened here. When you look at the board's factual findings, it looked at both the pain point aspect, as we call it, which is a unilateral process by which the employee committee members have little discretion, but the pass on the suggestions they get to management, you know, it's one way. And then if management comes up with a solution, they pass it back and looked at the meeting and the representatives attend, which is consistent with brainstorming and information gathering. But to answer your question, I don't think what the board did is consistent with precedent like Dillon and Reno. Those cases do involve group proposals and the board... No, no, but there's a difference between, yes, of course, they involve, they involve proposals of common interest to the employees, but you keep saying that, but the board here said there was no dealing with because there wasn't deliberation. That's different. Let me just give you one other example because our time is limited here. You mentioned the board said this is a suggestion box. The union points out that, again, relying on Dillon's stories here, that if there are functions other than a suggestion box, it could still qualify as dealing with, as dealing says. And here that's what the record shows. They did true, they related complaints, which if that's all they had done, it would have been a suggestion box, but it also proposed solutions for the complaints they identified. And so again, you have a situation, this is what the union argues, where the board has not engaged a, one of its own precedent, namely Dillon's story again, seems contrary to the decision. Your Honor, I don't think it's contrary because the board addressed both aspects and explained why the pain point process was a permitted suggestion box, and that other aspects like the meetings were permitted brainstorming or information gathering. And one reason for that is that where employees at times did present their individual views, like there was a meeting where they discussed a new insurance product and they gave their views on training for that, but it didn't rise to the level of making collective proposals or the other kinds of back and forth that the board has found demonstrated a pattern and practice of dealing, not just isolated instances. And so in short, there's more than one safe harbor and an employer can participate in more than one. There's nothing barring it from having a suggestion box and some brainstorming as it did here. So I guess one of the questions here then is, was, did the record not show pattern and practice? It's not a question of an isolated incident. That's right. That's what we're trying to understand here. And our court has been very interested in why precedent cited to it is not either controlling, relevant, or that the board no longer finds it persuasive. Something. But the board can't ignore the cases that have been cited to it. Davidson Hotel is our most recent, so far as I know, case to that effect. And in that case, the argument was made, well, the board's decision, the way it framed it, you could see it wasn't inconsistent with its prior precedent. We said, no, the board has to explain. The party argued these other cases that the board had decided and the board at best mentioned them inferentially. And we said, that's not good enough. And so why doesn't that approach? And I think Judge Tatel may have asked that question earlier. Why doesn't that approach and principle apply here? Even if you're ultimately correct, that the board's decision is consistent, doesn't the board have to tell us that when the union has raised plausible questions based on this record? No, I understand, Your Honor. My understanding of Davidson, I know, and I know you'll correct me if I'm wrong, is that it's not a blanket rule that an agency must separately distinguish every single case cited to them, no matter how many, but it must address cases that are inconsistent. And here, Dillon and Reno are not inconsistent. Rather, they're consistent with the principles the board did lay out in distinguishing the union's cases and explaining why this isn't dealing. And that includes cases where it's clear. The record shows and the board found the employee committee group emphasized collective proposals. That's dealing. We don't have that here. That's one distinction. And I think overall, the board's decision is supported by record evidence and consistent with precedent. It went through each aspect of the T-voice program and explained why it was either permitted suggestion box or permissible brainstorming and information gathering, the presentation of employees' individual views, and that there's no evidence or case law saying that you have to, say in the cumulative, two safe harbors amount to a violation. So at the end of the day, my opponent has some probative evidence, but it's not dispositive. It doesn't bar the board's finding or compel a finding of dealing based on subtle precedent and the facts here. And so unless Your Honors have further questions, I see- Let me ask you then, is your understanding of what we met in Davidson Hotel, if the court can read the precedent that a party has argued is inconsistent with the board's view, the court simply ought to go ahead and affirm? And I thought Davidson Hotel took a different position on that. In other words, the board has to say it, not the court. Part of my understanding is that where the agency's position on precedent is discernible and expressed, that is the board saying cases involving group proposals don't compel a finding of dealing here where we lack that according to the record evidence, or at least the board its findings are consistent with precedent and supported by substantial evidence. So if the court reads the cases on which the petitioner is relying and argued to the board and there's no reference in the board's decision to group proposals or pre-submission discussion by employees, then isn't that a case for remand for the board to provide further explanation? I would acknowledge if, for example, the board said dealing generally involves proposals advanced collectively and we don't have that here. And there are cases specifically saying, it's enough that employees advance an individual proposal and the employer responds, then there may be an issue for the board to remand that. But I don't think that's the situation here. I think the cases cited by the board and my opponent both support that dealing tends to involve collective proposals or something else that's a bilateral mechanism more than what was shown here. So I think at the end of the day, there isn't a basis for remanding or rejecting the board's decision, your honor. Thank you. Are there any other questions? All right. So counsel for petitioner, give you a couple of minutes. Thank you. The notion that there has to be group proposals in the sense that employees have to in any board precedent, the board has never said that it has to be group. Instead, what you see in the board cases is in some situations, there is that sort of deliberation among employees, but in others, there is not. Both models exist side by side. One is not to the exclusion of the other. Secondly, the notion that there has to be back and forth between the employee group and management is also not a requirement. That would be bargaining. It is enough if management considers, either really considers or apparently considers the proposals. And we think that this arrangement, this T-voice arrangement, takes all of the dealing with boxes. The employee, the T-voice representatives in a representative capacity gathered their coworkers' thoughts and ideas, presented them to management in multiple different forums, and management considered and responded. That's dealing with. You know, I hear you. I understand what you're saying. But you pretty much, your view, in my view, pretty much eliminates the notion of brainstorming and suggestion box, which I think would make no sense given the way companies operate. It makes perfectly good sense for employees are reacting to some of their work circumstances. In DuPont, you say there's nothing in the board case law that supports what they're saying here. I mean, DuPont's one of the cases you're talking about. They said each employee has management representatives who are full participating members. These representatives interact with employee committee members under the rules of consensus decision-making. Under this style of operation, the management members of the committee discuss proposal with unit employee members and have the power to reject any proposals. In circumstances where management members of the committee discuss proposals with employee members and have the power to reject any proposal, there is dealing. That's not what's going on here. And that's the overarching principle in all of the board's cases. It is true that maybe our rule is the board has to go through every single case that they've decided and square it. That's not my understanding of deference here, especially when you have this overarching principle, which says you have to have a situation in which employee representatives are presenting what the employees are proposing, and they are dealing with managers who can address what they are proposing. Here we had a situation where the members were simply collecting information, screen it for grammar, that's all, and passing it on to management. They had no authority. You can cite an example or two that said, well, in one situation, a manager heard a complaint about X and fixed it. I just don't, I think the board can say that's minuscule. That's not the point. The overall program was not designed to do that. The overall program was designed to collect, express concern by individual employees, not the group, and pass them on to management. That's not what these cases are saying. What's your best case? Let me ask you that. What do you think is your best case? I think there are two best cases. One is Dillon and one is UPMC. I would like to respond to a question. To the point about the union's argument would eliminate brainstorming and suggestion box. I disagree with that. These were not brainstorming sessions that these T-voice representatives were going to. They were asked in advance of the meetings to gather their co-workers' thoughts on specific topics and come ready to talk about solutions. It was not a situation where you have a bunch of people get together and in the meeting try to generate ideas. Those representatives could not address whatever concerns were expressed. They simply passed on. Having management with the authority in the meeting to respond right then and there is not a requirement. Not then and there, I'm saying at any point. They are simply collecting information and passing it on. It's like a suggestion box collects information and it's passed on. I hear you. The element of consideration can be met by a manager receiving the complaint or the proposal and conferring with another manager. That's consideration. Could you explain why you think those cases are responsive to his question? Yes. First, let me talk about Dillon. In Dillon, each grocery store had its own committee. The members of that committee were asked to get the input of their co-workers. Even when not asked, their co-workers would come to them with complaints and suggestions. They would then voice these at the meeting. Management would take them under consideration. Is this what happened here? Is that what happened here also? Yes, that is what happened here. I'm sorry. Go ahead. No, go ahead. I didn't mean to interrupt you. That is what happened here many times. It wasn't just a few unusual situations where that happened. Where is the evidence that it was actually beyond being minuscule? Did it happen regularly? In every national meeting, the national meetings were held monthly. In every national meeting, there were discussions. There were focus groups in which the objective was to flesh out solutions to employee problems. That happened monthly. There were substantive discussions at the regional levels that happened twice a month. At the local levels, that happened once a month. What about the other case? Then there were the summits. Yes, the national summits. What about the other case? UPMC is a 2018 case that I think is also instructive. In that case, it was an acute department. It had an employee council. Employee members of that council made proposals and presented grievances. Individually did so in the meetings. Management responded and took some of them under consideration. Taking it under consideration, according to Dylan and electromation is sufficient to show brain. Just remind me, you say the board did not address either of these in its decision, correct? That's correct. It did not. Thank you. You may disagree. I'm curious now. My recollection is that in Dylan, the board focused on the collective aspects of the process, which is not here. The board did not focus on it. That's just our different reading of the cases. Can we talk about what collective means for a minute? I know they use the word collective. What I thought, and maybe I don't understand it, but I thought there was a difference between a requirement that they deliberate, actually sit down and discuss it, and a collective proposal. I thought collective meant that it was a concern that many employees shared. That is the union's view. Is there a case that says that? I'm so sorry. I am so sorry. I do not have the ability. I'm so sorry. I had an interruption happens to all of us. I don't have the technique. There isn't a button for me to turn it off. Can you point to a case? Because Judge Edwards is right. These opinions that you're relying on talk about collective proposals. What I'm hoping you can help me understand is, is that different from deliberation? Because that's your point, right? Yeah, and Dylan, to quote them, in their conclusion, the board focused on whether the proposals were advanced collectively on a representational basis. That's not- Yeah, that's what I quoted from earlier when I was questioning counsel for petitioner. I should clarify that in Davidson, we didn't say you have to distinguish every case that you ever decided, but you do have to respond to the cases that are cited to you by the petitioner. Um, and that's what I was exploring with counsel for the board. So they didn't cite, obviously, the UPMC, but they did cite Dylan and Reno. Right. And the board didn't say anything about those cases. And while it may well be true that this collective aspect is critical, at least in Dylan, the court doesn't, I mean, the board doesn't mention that as part of its consideration or its rationale for finding that these entities at the stores were labor organizations under the statute. That's all we're trying to understand here. So do you have an answer to Judge Tatel's question, your best case on what collective means? I believe that Dylan is a perfect expression of it. The reason that it was those interests by the employees were regarded as collectively presented is because it was representatives presenting those grievances and proposals on behalf of their absent co-workers. That is exactly what we had here. And what the board says here, counsel, when you have a situation in which the person who's the quote unquote alleged representative is merely collecting and only eliminating things that are redundant and correcting grammar, and then simply passes it on that doesn't fit what they're talking about when they're talking about representational. I don't know how the board doesn't get deference on that call. The board was factually wrong. Okay. Well, then our standard is different. So you're saying the board, that's exactly what I've been trying to get to. You disagree with the board's factual finding. Absolutely. Okay. That's a whole different thing. You're in a really tough stand at a review there. Well, we complain about two things, their application of the law and their... I think what we're really talking about is you disagree with their findings, because I think these cases are squared up with prior cases. And that's what I've been trying to understand. I think you just disagree with their findings of fact. We do. And our briefing... You're on a substantial evidence course. And that's the question. Well... They were legally incorrect. Wait, but to pursue that, I just want to pursue what Judge Edwards asked you. Let me just see if I can... Is your argument that the board failed to consider, say, Dillon, dependent on your argument that the board's findings are wrong? In other words, do you understand my question? In other words, let me put it this way. Suppose we decided that the board's findings about what happened were acceptable. That is, they didn't meet our standard for reversing a board fact finding. Would you then agree that there's no problem in the board not distinguishing its prior cases because those cases are, by definition, different? Do you know what I mean? I do. You're asking if we accept the board's fact findings, which the union does not. I understand. Would the board be right? No, it would not. Then tell me why. Because these particular T-voice representatives were doing it all. They collected, they presented... Well, no, see, but you're resisting my... And the board... Ms. Whitman, you're resisting my question. I'm sorry? You're fighting my question, I think. The board found, am I right? The board found that they were just collecting concerns and submitting them, right? That's what the board found. Is that true? That is what the board said. Okay. Now, if that's true, if that's all they did, then wouldn't you agree that that's okay, that that meets the standard for, what do you call it, a question box or something? If you're not looking at the T-voice organization as a whole, and if all these people were doing is just collecting and passing along, then that would fit the employee screening committee in... Okay, but isn't that, in fact, what the board found? No, the board also discussed the meetings that these people were in and said that they were brainstorming meetings, and they were not. And there's no precedent where you've got all of those things going on, and the board found that there was no dealing. Then your point is that taking the board's findings as they are, without regard to whether the support, in other words, just accepting the findings as they are, this case is inconsistent with Dillon, Reno, and these other cases. That's your point, right? Yes. Okay. Okay. I have no other questions. No other questions. Thank you. Thank you, counsel. We'll take the case under advisement.
judges: Rogers, Tatel, Edwards